**STATE of Tennessee, Appellee,**

v.

**Roy VANCE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 7, 1994.

R.O. Smith, Erwin, for appellant.

John B. Nisbet, III, Asst. Atty. Gen., Crim. Justice Div., Nashville, for the State of Tenn.

*OPINION*

WALTER C. KURTZ, Special Judge.*

The defendant, Roy Vance, appeals as of right from his conviction for aggravated burglary (T.C.A. § 39–14–403). The defendant received a sentence of ten (10) years and a fine of Five Thousand Dollars ($5,000.00).

A number of issues are presented for review: (1) was the evidence sufficient to support a conviction; (2) was there a speedy trial violation; (3) was the delay in sentencing justified; (4) did the trial court properly instruct the jury; (5) did the trial court consider the sentencing factors properly; and (6) should the defendant have been provided with a transcript prior to the motion for new trial. Because we reverse on the jury instruction issue, our ruling makes moot all other issues except the speedy trial issue.

Jay Hicks testified that he had known the defendant since grade school and that the defendant had visited him at his home on the evening of July 28, 1992. The defendant told Mr. Hicks that he had just lost his job and did not have any money. The victim, Mr. Hicks, was then regularly attending a school which trains truck drivers. The defendant asked Mr. Hicks specific questions concerning when Mr. Hicks left for school in the morning and when he returned in the evening. Mr. Hicks told the defendant that he had school the next day, left home at 5:30 a.m., and returned at 5:30 p.m. in the evening. The defendant also asked for and received Mr. Hicks' unlisted phone number.

On the morning of July 29, 1992, Mr. Hicks decided not to go to school that day because his conversation with the defendant had made him suspicious. That morning, Mr. Hicks' phone rang repeatedly, and he unplugged the phone so he could go back to sleep. Later, Mr. Hicks heard someone yell and knock on the door. As he looked out the window, Mr. Hicks saw the defendant's vehicle leave the driveway.

Shortly thereafter, Mr. Hicks heard a vehicle enter the driveway; he then heard a knock on the door and the turning of a doorknob, followed by the sound of breaking

glass. At that point, Mr. Hicks picked up a phone and a pistol, ran into the bathroom, and called the Sheriff's Department. Mr. Hicks heard another window break; he stepped out of the bathroom and found the defendant in his kitchen heading for the kitchen cabinets. Mr. Hicks held the pistol on the defendant until the sheriff arrived. According to Mr. Hicks, the defendant told him he was in the house to borrow a gun because someone tried to kill him the night before.

Officer Ron Arnold and Lieutenant William Rogers responded to Mr. Hicks' call to the Sheriff's Department. After arresting the defendant, Officer Arnold noticed that the defendant's vehicle was parked off the driveway next to a shed. Officer Arnold testified that the defendant's vehicle was not visible from the road and could not be seen until coming up to it. Officer Arnold observed the following: the basement window has been knocked out; the basement led up to a closed off back porch and a door to the kitchen, and a window to the kitchen door had been broken. Officer Arnold also found a broom with small pieces of glass on the handle. Lieutenant Rogers' testimony supported the observations of Officer Arnold.

The defendant testified that he called Mr. Hicks in the morning and received no answer. He then became worried that something had happened to Mr. Hicks, so he went into the house to check on Mr. Hicks. When there was no answer to his knock, he broke in to determine if Mr. Hicks was injured or ill. The defendant said he had no intent to take anything, but only concern for his friend. He denied making any statement about coming to borrow a gun. Pursuant to T.R.E. 609, the defendant admitted to prior convictions for armed robbery and several burglaries.

I. *Speedy Trial Violation*

The defendant was arrested on July 29, 1992, indicted on November 13, 1992, and tried on March 30, 1993. Because of a conflict of interest with the public defender's

---

* Judge Kurtz was sitting by designation with the Court of Criminal Appeals at Knoxville by order of the Chief Justice of the Supreme Court dated April 18, 1994.

office, counsel was not appointed until December 18, 1992. On December 31, 1992, the defendant filed a motion to dismiss alleging a speedy trial violation.

To determine if the defendant's Sixth Amendment right to a speedy trial has been violated, this court must apply a balancing test which requires the consideration of four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay. *State v. Bishop,* 493 S.W.2d 81, 83–84 (Tenn.1973); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The single most important factor is whether the defendant was prejudiced by the delay, and the most important issue concerning prejudice to the defendant is the impairment of the ability to prepare a defense. *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193; *State v. Baker,* 614 S.W.2d 352, 356 (Tenn.1981).

We now consider the four factors.

(1) The length of the delay. The length of delay from arrest to trial was eight (8) months. A delay of as long as two years standing alone will not support the finding of a speedy trial violation. *State v. Bishop, supra,* at 84, *State v. Walton,* 673 S.W.2d 166, 170–171 (Tenn.Crim.App.1984).

(2) The reason for the delay. After the defendant's arrest, but before trial, the defendant was charged with introducing contraband into the jail. Apparently, this created a conflict of interest with the public defender's office; so new counsel was appointed on December 18, 1992.

(3) Assertion of the right. The defendant asserted his right to a speedy trial on December 31, 1992.

(4) Prejudice resulting from the delay. There is no indication in the record that the defendant was impaired in the preparation of his defense, nor is there any other indication of prejudice to the defendant.

Upon balancing all the factors and in light of the fact that prejudice is the most significant factor, the court concludes that there was no violation of the defendant's right to a speedy trial.

## II. *Jury Instructions*

The defendant asserts that the trial court should have charged the jury with the lesser included offense of criminal trespass. (T.C.A. § 39–14–405). We agree.

Aggravated burglary is committed when a person without the effective consent of the property owner enters a habitation with intent to commit a felony or theft. *See* T.C.A. § 39–14–402 and 403. Criminal trespass is committed when a person knowing he does not have the owner's effective consent enters on property. *See* T.C.A. § 39–14–405. A person cannot commit aggravated burglary without also committing criminal trespass.[1] The test to determine a lesser included offense was explained by the Supreme Court in *Bobby Joe Wright v. State,* 549 S.W.2d 682 (Tenn.1977) as follows:

> We think a better test was laid down by this Court, speaking through the late Justice Weldon White, in *Johnson v. State,* 217 Tenn. 234, 397 S.W.2d 170 (1965):
>
>> The true test of which is a lesser and which is a greater crime is whether the elements of the former are completely contained within the latter, so that to prove the greater the State must first prove the elements of the lesser. 217 Tenn. at 243, 397 S.W.2d at 174.

*Id.* at 685–86. This case was closely followed by *Howard v. State,* 578 S.W.2d 83 (Tenn. 1979), in which the court making reference to the *Bobby Joe Wright* case stated:

> We believe that the better rule, and the one to be followed henceforth in this State, is the rule adopted implicitly by this court in *Wright v. State, supra,* that, in this context, an offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not con-

---

1. The indictment, in pertinent part, alleges that the defendant "did unlawfully enter the habitation of Jay Hick's [sic] without his effective consent, not open to the public, with intent to commit theft . . ."

gruent with, all the elements of the lesser. If there is evidence to support a conviction for such a lesser offense, it must be charged by the trial judge. T.C.A. § 40–2519; [now T.C.A. § 40–18–118(a) ] *Whitwell v. State*, 520 S.W.2d 338 (Tenn.1972). *Id.* at 85.

■ Criminal trespass is a lesser included offense of aggravated burglary under the facts in this case. In fact, the defendant's own testimony admits he was guilty of acts sufficient to support a conviction for criminal trespass but not aggravated burglary. The defense counsel orally requested a charge for the lesser offense of criminal trespass. The trial judge denied the request.[2]

■ T.C.A. § 40–18–110(a) requires trial judges' to instruct on lesser included offenses whether requested to do so or not. *See Howard v. State, supra*, at 85; *Johnson v. State*, 531 S.W.2d 558, 559 (Tenn.1975) and *State v. Katherine Wright*, 618 S.W.2d 310, 315 (Tenn.Crim.App.1981). Failure to instruct on a lesser included offense "denies a defendant his constitutional right to trial by jury." *Id.* at 315.

This court could independently analyze the authorities, but rather than do so; it relies on the excellent discussion of this issue by Judge Joe Duncan in the case of *State v. Katherine Wright, supra.* In *Katherine Wright*, a murder conviction was reversed for failure to instruct a lesser included offense.

The law in Tennessee is clear that where there are any facts that are susceptible of inferring guilt of any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. *State v. Staggs*, 554 S.W.2d 620 (Tenn.1977); *Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224 (1962); *Templeton v. State*, 146 Tenn. 272, 240 S.W. 789 (1922); *Poole v. State*, 61 Tenn. (2 Baxt.) 288 (1872). Failure to do so denies a defendant his constitutional right of trial by a jury. *State v. Staggs*, supra; *Strader v. State*, supra.

In *Poole v. State*, supra, we find the following language:

It is also the duty of the Court to define in his charge all the offenses embraced in an indictment for this crime. The jury is the exclusive judge of the facts, the Court is a witness to it of the law. When the jury has heard the facts, it is for it to say what offense, if any, has been committed against the law. However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury.

The rule that a Court is only required to charge as to such questions as are made by the facts, means simply that if legal questions present themselves by the facts, and which are claimed either to sustain or refute the charges in the indictment, then it is the duty of the Court to charge upon such questions but if questions not so raised are urged, it is not the duty of the Court to charge touching them. It was never meant that the Court should be excused from defining the offenses averred or embraced in the indictment. 61 Tenn. at 294–95.

In commenting on the obligation of a trial judge to charge on lesser included offenses, our Supreme Court in *Strader v. State*, supra, after quoting the language of T.C.A. § 40–2518, [T.C.A. § 40–18–110(a) ] said:

Thus, the command of this statute is without qualification or exception. It includes all cases of felonies with lesser included offenses, and requires the judge to charge the jury as to all the law of each of such offenses in all such cases. But we have held that such charge need not be given where there is "no evidence" of such

---

2. Some confusion may be the result of the change in the criminal code in 1989 which redefined criminal trespass. Acts 1989, Ch. 591 § 1. Prior to November 1989, the criminal trespass statute required proof of a "breach of the peace."

Therefore, prior to November 1989, criminal trespass was not a lesser included offense of burglary because burglary did not require proof of a "breach of the peace." *See Howard v. State*, supra, at 85.

offense, and the charge would be a mere abstraction "upon hypothetical questions not suggested by proof." *Good v. State,* 69 Tenn. 293, 294–296; *Baker v. State,* 203 Tenn. 574, 577, 315 S.W.2d 5.

. . . .

In *Frazier v. State,* 117 Tenn. 430, 441, 100 S.W. 94, it is said that the Trial Judge's omission to charge the jury the law as to such lesser included offenses is reversible error, unless there is no evidence as to such offenses and unless it is absolutely certain that defendant could not be prejudiced by such omission. The rule there stated by Judge Shields for the Court, has been often quoted with approval. He said:

"The better practice to be pursued by trial judges undoubtedly is for them to charge upon all offenses embraced in the indictment, because, whenever there is any doubt that the defendant has been prejudiced by such omission, it will be error, for which it will be the duty of this court to reverse the judgment and remand the case for a new trial. It is only in cases where it is absolutely certain that the omission was not prejudicial to the defendant, in the trial court, that a charge omitting instructions upon every offense contained in the indictment can be sustained." (117 Tenn. at 441, 100 S.W. at 97). 210 Tenn. at 679, 682–83, 362 S.W.2d 224.

In *Templeton v. State,* supra, we find this apt comment:

Under our system the jury is the judge not only of the facts but of the law as well, the court being only a witness as to the law, and it is his duty to tell the jury what the law is, applicable to any phase whatever of offenses charged against a defendant. He cannot be excused from doing so upon the ground merely that the defendant insists he is not guilty of anything and the State that he is guilty of a higher offense. If the facts are at all susceptible of the inference of guilt of the lesser grades of the offense, the jury must be given the law with respect thereto. 146 Tenn. at 280, 240 S.W. 789.

In *Good v. State,* supra, the court set forth the factors that must be present to warrant a trial judge to forego a charge on lesser included offenses. After referring to the statute [now T.C.A. § 40–18–110(a) ] requiring a charge on the grades or classes of offenses included in an indictment, the court said:

This is a wise statute made for the protection of the accused in all cases in which the facts may demand its application. Its purpose is to secure the defendant the benefit of all the law applicable to the facts of his case, without any request on his part. It was not intended, however, to call from the court a charge upon hypothetical questions not suggested by proof.

When it is clear that the grade of offense charged is proved, and there is no room for doubt as between it and a lesser grade embraced by statute in the higher, and of course included in the indictment, to charge the law pertaining to such lesser grades would simply tend to confuse and mislead the jury, and often result in verdicts inadequate to the crime actually committed. In applying the rule of this opinion courts will of necessity act with circumspect caution, giving to the accused the full benefit of all the rules of law applicable to the facts developed in the trial of his cause.

When the offense charged is beyond controversy made out and is complete, it is the duty of the court to confine its charge to such case; and so, if the offense must be the one charged or no offense in law, as frequently happens, the charge should be so restricted that the jury may be enabled to decide intelligently the single question presented and not be mystified by abstractions. 69 Tenn. at 294–95.

The State, referring to the rule of *Good v. State,* supra, which rule we have quoted above, and also citing *Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975), acknowledges that trial courts have a duty to charge on lesser included offenses, but argues that such duty does not extend to those offenses unsupported by any view of the evidence. The State insists that the proof in the present case shows the defendants'

guilt of murder in the first degree, exclusive of any lesser included offenses, and therefore the ultimate outcome of the novel procedure followed by the trial court was proper.

While the evidence in this case is very strong to show the defendants' guilt of murder in the first degree, we cannot say, in view of the facts as we have previously set forth, that there was no evidence to warrant the jury in finding one or both of the defendants guilty of some lesser grade of the homicide had the jury been given an opportunity to do so.

*Id.* at 315–17.[3]

 These principals are well illustrated in the case of *Johnson v. State, supra,* in an opinion authored by the late Justice William Harbison. Johnson was indicted for armed robbery. The State produced evidence indicating Johnson was guilty of this offense. Included in the State's proof, however, was Johnson's confession stating facts that he was only guilty of petit larceny. Johnson was found guilty of robbery. Johnson did not testify, and the trial judge refused to instruct on the lesser offense of petit larceny. The Supreme Court ruled that the trial judge was in error in his failure to instruct on petit larceny. Johnson's confession alone was sufficient to raise the issue. Justice Harbison stated that "[t]he cases are clear that if there is any evidence which reasonable minds could accept as to any such offenses, the accused is entitled to the appropriate instructions." *Id.* at 559. The conviction was reversed for failure to instruct on the lesser included offense. *See also Bobby Joe Wright v. State, supra* (larceny conviction reversed because trial judge failed to instruct on the lesser included offense of shoplifting).[4]

In this case, the trial judge and perhaps even this panel, may think that the appellant's explanation for being in the house was not credible. This however, is a matter of indifference. The fact finder here is the jury, and they must be correctly instructed. It is the jury's function to determine whether this appellant was guilty of aggravated burglary, criminal trespass, or not guilty. Here the appellant's explanation, if believed, would have supported a conviction for criminal trespass, not aggravated burglary. "If the facts are at all susceptible of the inference of guilt of the lesser grades of the offense, the jury must be give the law with respect thereto." *Templeton v. State,* 146 Tenn. 272, 280, 240 S.W. 789 (1922).

The conviction is reversed and remanded for further proceedings consistent with this opinion.

SCOTT, P.J., and WELLES, J., concur.

---

3. Another excellent analysis of this issue is found in Raybin, *Tennessee Criminal Practice and Procedure* § 30.70 (1985).

4. The court wishes to emphasize that there is no need to instruct on a lesser included offense if the facts do not warrant. *See, e.g., Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975) (petit larceny is a lesser offense of grand larceny, but it should *not* be instructed unless their is some proof that

the amount of the goods taken were less than $100.00. "The court is not required to instruct on lesser included offense where there is no evidence to support a lesser included offense") and *State v. Leon Johnson,* C.C.A. No. 87–245–III, 1989 WL 34930 (Tenn.Crim.App. April 12, 1989) (criminal trespass may be lesser included offense of burglary, but no need to instruct when defendant said he never went on the property).