# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JUNE SESSION, 1999

FILED

September 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03C01-9707-CR-00306 |
| Appellee, | ) | |
| | ) | BLOUNT COUNTY |
| vs. | ) | |
| | ) | Hon. D. Kelly Thomas, Jr., Judge |
| FRED W. KINCAID, JR., | ) | |
| | ) | (Rape) |
| Appellant. | ) | |

For the Appellant:

**Julie A. Martin**
Contract Appellate Defender
P. O. Box 426
Knoxville, TN 37901-0426


(ON APPEAL)


**Raymond Mack Garner**
District Public Defender

**Natalee S. Hurley**
**Shawn Graham**
Asst. District Public Defenders
419 High Street
Maryville, TN 37804


(AT TRIAL)

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Ellen H. Pollack**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493


**Michael L. Flynn**
District Attorney General

**Edward P. Bailey, Jr.**
Asst. District Attorney General
363 Court Street
Maryville, TN 37804


OPINION FILED: _____

AFFIRMED


**David G. Hayes,** Judge

## OPINION

The appellant, Fred W. Kincaid, Jr., was indicted for aggravated rape and theft of property under $500. A Blount County jury found him guilty of the lesser offense of rape and theft as charged in the indictment. The trial court imposed concurrent sentences of nine years for the rape conviction and eleven months, twenty-nine days for the theft conviction, to be served in total confinement. In this appeal as of right, the appellant raises the following issues for our review:

> I. Whether the trial court erred in instructing the jury on the lesser offense of rape; [1]
>
> II. Whether the evidence was sufficient to support his conviction for rape; and
>
> III. Whether the trial court's imposition of a nine year sentence for the appellant's rape conviction is excessive.

Finding no error of law requiring reversal, we affirm.

## Background

On November 23, 1994, Mary Laws, Sonya Davidson, and Christie Ivey rented a room at the Family Inn on Alcoa Highway in Blount County. That evening, the threesome invited their boyfriends to the room for a party. Mary Laws' boyfriend, Brian Walden, attended. The next morning, Mary Laws reserved the room for another night with the intention of spending time with her boyfriend. After paying for the room, Mary Laws and the two other females left the motel, returning to their respective residences to spend Thanksgiving with their families. Mary Laws returned to the motel room around 3:00 that afternoon and took a nap until 6:00 p.m. Upon awakening, she paged Brian Walden, however, he did not answer the

---

[1] The appellant does not challenge his conviction and sentence for theft of property.

2

page.  She then decided to drive by Walden's house and the park to see if she could locate him.  Unable to locate her boyfriend, she drove back to the motel.  As she parked her vehicle in the motel parking lot, she noticed a group of people sitting in a little blue car.  Ms. Laws returned to her room and attempted to call Sonya Davidson.

While she was on the telephone, there was a knock at the door.  "[She] turned around and opened the door and turned back around to pick the phone back up."  She later testified that she did not look back toward the door because she "just figured it was either Sonya or Christie.  . . . somebody that knew [she] was there."  As she picked up the telephone, Ms. Laws was pushed from behind onto the bed.  The lights were turned off and Ms. Laws's clothes were removed by "[f]ifteen, twenty people."  She was then "forced to have oral sex and natural sex with I don't know how many people."  Ms. Laws recognized the appellant as one of the perpetrators because they had attended the same school.  She did observe that all of the men in the room were African-American.  She also identified another intruder as being Manguel "Smurf" Adams, a cousin of her boyfriend, Brian Walden.[2]

At some point during the sexual assaults, one of the perpetrators forced an object into her vagina.  The appellant informed police officers that the object was an unopened beer bottle.   This action tore the victim's labia, causing extreme pain and bleeding.  While some of the intruders held her to the bed, the appellant sexually penetrated Ms. Laws.  Because of the pain from the sexual assaults, the victim began screaming and attempted to fight off her attackers.  At this point, a number of those present did leave the motel room.  Eventually, she was able to make her way into the bathroom.  Ms. Laws related that the appellant followed her into the bathroom and tried "to comfort [her], telling [her] that he was going to help [her].

_____

[2]Mary Laws initially advised Detective Boling that "Smurf" had participated in this attack.  At the insistence of her boyfriend, Brian Walden, she later signed an affidavit recanting this statement.  At trial, she admitted that she did this in part because she was in love with Brian Walden.

And then he started touching [her]." "He was touching my breasts and trying to touch my vagina." "[Ms. Laws] pushed him out of the way and ran out again." She noticed that only three of her attackers remained in her motel room, including the appellant.

While the assaults were taking place, Shelby Renee Garrett, a desk clerk at the motel, heard noises that sounded like a party coming from Room 203, the room occupied by Mary Laws. As it was not motel policy to encourage parties, Ms. Garrett telephoned the room on numerous occasions. Each time someone in the room answered the telephone, they hung up without responding to Ms. Garrett. On her final attempt, she heard someone in the background say "just unplug it." During this same time period, Ms. Garrett had observed eight to ten black males going back and forth up the stairs to Room 203, and received a report that a man was spotted carrying a gun. She then notified motel manager, Kathy Ware, who immediately left her home for the motel.

When Ms. Ware arrived at the motel, she notified local law enforcement that she would need assistance in order to evict the people from Room 203. With the purpose of evicting Ms. Laws, Ms. Ware went up to the room and knocked on the door. As the door opened, she observed one black male and Ms. Laws in the motel room; Ms. Laws was putting on a pair of pants. Ms. Ware then asked Ms. Laws to accompany her to the lobby. The lone male left the room and Ms. Ware did not get a good look at him. Officer Bud Cooper of the Alcoa Police Department was dispatched to the Family Inn Motel. He arrived as Ms. Laws was coming down the stairs from her motel room.

Ms. Ware and Officer Cooper returned to Room 203 to check for any property damage. Upon returning to the room, they observed beer bottles, condoms, and condom wrappers strewn all over the room. The bed sheets were stained in blood

4

and a blood stained washcloth and drops of blood were discovered in the bathroom. After Officer Cooper and Ms. Ware returned to the motel lobby, Ms. Laws informed them that she had been raped. Ms. Laws also discovered that many of her personal possessions had been stolen, including her CD player, her wallet containing $100, her driver's license, her BP gas card, her ATM card, her pager, approximately fifty CDS, and a tape player.

Officer Holly Hatcher arrived at the motel and transported the victim to the emergency room of Blount Memorial Hospital for a physical examination. Dr. Kevin Stasney examined the victim. The examination revealed that the victim had a tear of the labia and parallel abrasions on the vaginal walls. Dr. Stasney opined that neither of these injuries were consistent with consensual sexual intercourse. The only signs of external force were the victim's three broken fingernails. The victim was not under the influence of either drugs or alcohol.

A warrant was issued for the appellant's arrest. On Saturday, November 25, the appellant voluntarily turned himself in at the Blount County Jail. Corrections Officer Edmund Cox testified that, upon inventorying the appellant's personal possessions, he discovered a Lerner's credit card belonging to Mary Laws in the appellant's back pocket. The appellant explained that he had found the credit card outside on the steps as he was coming into the jail.

The appellant later provided a statement to the police admitting that he was in Room 203 at the Family Inn on Thanksgiving Day. He explained that he had been in Room 208 watching a football game with several friends. When he left the room, he saw a lot of people coming in and out of Room 203. "[He] went in and [he] seen [sic] a lot of people havin' I had seen this girl havin' oral sex with one person, havin' sex with another person." ". . .[S]omebody yelled, get up and close the door, come on i[n] and have some fun. I was like, okay, whatever, so I closed the door. . .

." ". . . [T]he person that I did know that was havin' sex with her at that time he was, Manguel, was havin' sex and the girl was performing oral sex on Jason Bryant." ". . .I just went ahead and do [sic] what everybody else was doin' -- 'got in line.'" He denied, however, that he had sexual intercourse with the victim. The appellant advised officers that the victim was not physically restrained by other individuals present at any time during the various acts of sexual penetration. The appellant added that, earlier when he and the victim's boyfriend, Brian Walden, were in Room 208, Walden had stated that he had paid his girlfriend to have sex for money.

While in jail, the appellant contacted fifteen year old Yolanda Brown. He told her to "[g]et his belongings out of his car."[3] Brown and her friend, Patrice Brown, gathered the appellant's possessions from the car. In doing so, they found a black leather coat, a gold chain, and a checkbook. Brown discovered that the checkbook belonged to Mary Laws. Brown telephoned Mary Laws and told her that "if she would give $50 to me and my friend that she could have the checkbook back." Brown then arranged to meet Laws in the parking lot of Bethel Church. Rather then meeting Ms. Laws, Brown was met by an Alcoa police officer; who recovered Ms. Laws's property.

The evidence collected pursuant to the post-rape examination and blood samples obtained from the appellant were sent to the TBI's Forensic Services Division in Nashville. DNA analysis of the samples reveals "a matching DNA profile" and that the appellant could not be excluded as the perpetrator. Special Agent Joe Minor, who conducted the analysis, concluded that "there would be approximately one other person out of 8,000 in the black population that could have contributed that profile amongst unrelated individuals."

---

[3]Brown's mother had previously driven the appellant's blue car to her residence because the car was about to be repossessed.

Based upon this evidence, the jury found the appellant guilty of the lesser offense of rape and theft of property under $500.

## I. Instruction on Lesser Offense

In this case, the indictment charged the offense of aggravated rape based upon allegations that the appellant forcefully penetrated the victim and he was aided or abetted by one or more other persons. See Tenn. Code Ann. § 39-13-502(a)(3)(A) (1994 Supp.). In this appeal, the appellant contends that the evidence does not support a conviction for the offense of rape, *i.e.*, there was no evidence to convict the appellant for forcible sexual penetration of the victim alone. As grounds for his argument, he asserts that the only consistency in the numerous inconsistent statements provided by the victim is her affirmation that the appellant was aided and abetted by other persons. Consequently, he submits that "in order to believe [the appellant] did the raping, the jury must necessarily believe [that he was aided and abetted by one or more other persons.]" Accordingly, he argues that the jury had the option of finding him guilty of aggravated rape or nothing at all and that the trial court "committed reversible error by only analyzing the statutory elements of the offenses of aggravated rape and rape when deciding it had to give the rape instruction in this case."

A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. This includes giving instructions on lesser offenses included in the indictment without any request on the part of the defendant. See Tenn. Code Ann. § 40-18-110(a)(1990). Cf. Tenn. R. Crim. P. Rule 31(c) (places the defendant upon notice that he "may be found guilty of an offense necessarily included in the offense charged"). However, before an instruction on a lesser offense is warranted, the trial court must make two

7

essential determinations. Initially, the court must determine which offenses are a lesser offense of the offense charged in the indictment. See State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); State v. Elder, 982 S.W.2d 871, 877 (Tenn. Crim. App. 1998).

In determining whether one offense is a lesser grade of another, "[o]ne need only look to the statutes to determine whether a given offense is a lesser grade." Trusty, 919 S.W.2d at 310. "[A]n offense qualifies as a lesser included offense only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense." Trusty, 919 S.W.2d at 310 (citing Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450-1451 (1989)). The standard is that "[t]he lesser offense may not require proof of any element not included in the greater offense as charged in the indictment." Id. at 311 (interpreting Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979)). Under these definitions, rape is both a lesser grade and lesser included offense of aggravated rape. See Trusty, 919 S.W.2d at 310-311. Compare Tenn. Code Ann. § 39-13-502 and § 39-13-503.

Once the lesser offense is determined, the trial court must next determine whether such an instruction is warranted by the evidence. See Elder, 982 S.W.2d at 877 (citing State v. Vance, 888 S.W.2d 776, 780 (Tenn. Crim. App. 1994)). Where there is no proof in the record to support the instruction, no jury instruction on the lesser offense need be submitted. Elder, 982 S.W.2d at 877. In Keeble v. United States, the United States Supreme Court held that "[a] defendant is entitled to an instruction on a lesser . . . offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995 (1973) (internal footnote omitted) (emphasis added); see also Trusty, 919 S.W.2d at 311; Elder, 982 S.W.2d at 877. Thus, the "trial court must determine whether the evidence, when

viewed in the light most favorable to the defendant's theory of the case, would justify a jury verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense." Elder, 982 S.W.2d at 877 (citations and footnote omitted).

Again, the element challenged by the appellant is whether he was aided or abetted by one or more persons in the commission of the rape. The appellant maintained, in his statement to the police, that no other persons held the victim. He conceded his presence at the scene. DNA analysis revealed that the probability that the appellant committed the rape was 1 in 8,000 African-Americans. Additionally, undisputed medical testimony revealed that the injuries suffered to the victim's genital area were consistent with a forceful penetration and inconsistent with consensual intercourse. The evidence, in this case, is sufficient for a rational trier of fact to find the elements of rape beyond a reasonable doubt and acquit the appellant of aggravated rape. See Tenn. R. App. P. 13. Accordingly, the trial court properly instructed the jury on the lesser offense of rape. This issue is without merit.

## II. Credibility of the Victim

The appellant also contends that the proof presented at trial is insufficient as a matter of law to uphold his conviction for rape. Specifically, he argues that the victim's version of the events of the rape "varied widely and significantly not only from her own mouth, but also with statements from 'disinterested' bystanders and witnesses."[4] Thus, he argues that "no 'rational' jury could possibly reconcile all the

---

[4]The appellant notes, in his brief, the following illustrations of conflicting evidence: The victim recognized the blue car and Mr. Kincaid; she did not recognize the blue car nor Mr. Kincaid in it. She took an hour nap; she took a three-hour nap. There were six to eight men in the room; there were twenty men in the room; there were at least three men in the room. She made no phone calls from the room except to page her boyfriend; she just called her friend Sonya from the

9

conflicts in the evidence presented by the State." (emphasis in original).

Accordingly, the appellant submits that "no rational fact finder could find anything

other than a total lack of credibility by the victim in this case due to her repeated

admissions that she lied over and over under oath as well as in unsworn interviews

with the officers who were there to help her." (emphasis in original). Essentially, the

appellant's challenge is one of witness credibility.

The Constitutional standard of appellate review is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979). This rule

reflects the fundamental tenet of American jurisprudence that the jury is the sole

trier of fact responsible for determining witness credibility, resolving conflicts in

testimony and for drawing any inferences from the proven facts. Jackson v. Virginia,

443 U.S. at 319, 99 S.Ct. at 2789. Indeed, the Jackson v. Virginia standard does

not provide the appellate court a vehicle to substitute its own appreciation of the

evidence for that of the factfinder. See generally State v. Cabbage, 571 S.W.2d

832, 835 (Tenn. 1978). In the absence of internal contradiction or irreconcilable

conflict with physical evidence, one witness's testimony, if believed by the trier of

fact, is sufficient to support the requisite factual finding. Even if a witness's

room; she only called her home and her boyfriend from the room.

Her pants and underwear were removed by her attackers; all her clothes were removed by her attackers, She had been attacked in her room by lots of men then helped and comforted by Mr. Kincaid; she had been attacked in her room by lots of men and Mr. Kincaid had oral and "regular" sex with her then tried to comfort and help her; she had been attacked in her room by lots of men and the Defendant only had regular sex with her before trying to comfort her. Mr. Kincaid was the first person to rape her; Mr. Kincaid was the last person to rape her.

She knew the men used condoms because she could hear the packages tearing; she was not sure any of the men used the condoms and was screaming so loud at least a portion of the guys left. She was nude when the manager arrived at the room; she was partially dressed and looking for her things when the manager arrived.

She heard and saw Smurf, a/k/a Manguel [sic] Adams, in the room; she heard Smurf's name mentioned by someone; she heard Smurf's name mentioned and heard him respond although she did not see him. She swore Smurf sexually penetrated her, she swore Smurf did not sexually penetrate her; she swore she was not sure if Smurf sexually penetrated her.

10

testimony was "evasive, conflicting or severely impaired," the jury has a right to believe as much of it as they believe proper." See United States v. Luciano, 343 F.2d 172, 173 (4th Cir. ), cert. denied, 381 U.S. 945, 85 S.Ct. 1792 (1965). Although the inconsistencies may make the witness less credible, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. In the case *sub judice*, the inconsistencies in the victim's various accounts of the incident are not so unsatisfactory as to create a reasonable doubt of the appellant's guilt. The jury's verdict is supported by the evidence at trial. The victim never swayed from her testimony that the appellant vaginally penetrated her without her consent. Medical testimony confirmed that the penetration was non-consensual and scientific evidence corroborated the victim's identification of the appellant as the perpetrator. Moreover, the appellant conceded his presence in the victim's motel room. The proof is more than sufficient for a jury to find that the appellant, by force, sexually penetrated the victim. See Tenn. Code Ann. § 39-13-503-(a)(1) (1991). Accordingly, this issue is without merit.

### III.  Length of Sentence

In his final challenge, the appellant avers that the "trial court improperly considered and weighed the enhancing and mitigating factors in sentencing him to serve nine years in TDOC custody." Specifically, he "contends that the trial court failed to properly consider and weigh in mitigation factors which should have resulted in a lesser sentence for him." Indeed, the appellant submits that the court failed to consider the following mitigating factors:  (8) that the appellant cooperated with the authorities by naming other individuals that had sex with the victim; and (11) that the offense was committed under such unusual, and truly bizarre, circumstances that it is unlikely a sustained intent to violate the law motivated his

conduct; and (13) his voluntary surrender to law enforcement authorities and his concern over the victim at the time of the incident. <u>See</u> Tenn. Code Ann. § 40-35-113 (1990).

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1990). <u>See also</u> <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). Thus, this court may only modify a sentence if the sentence is excessive or the manner of service is inappropriate. <u>State v. Russell</u>, 773 S.W.2d 913, 915 (Tenn. 1989). Moreover, on appeal, the appellant bears the burden of showing that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

Other than the presentence report, no new evidence was presented at the sentencing hearing. The presentence report reflects that the appellant was twenty-six years old at the time of the offense. The appellant has a history of prior criminal convictions, including two assault offenses and one conviction of statutory rape. The report also indicates that the appellant has repeatedly violated conditions of previously imposed sentences involving probation. Indeed, the appellant was on probation at the time of the instant offenses. Additionally, the appellant has a sporadic, almost non-existent, work history, including one month as a custodian in the Knox County School System.

In arriving at the appropriate sentence for the rape of Mary Laws, the trial court found two enhancement factors applicable: (1) The defendant has a previous history of criminal convictions or criminal behavior; and (7) The offense was committed to gratify the defendant's desire for pleasure or excitement. <u>See</u> Tenn. Code Ann. § 40-35-114(1), -114(7) (1994 Supp.). The appellant concedes the propriety of the enhancement factors applied by the trial court. The court did not find

12

any mitigating factors applicable nor did the court make any specific findings regarding its rejection of mitigating circumstance. The court then imposed a penitentiary sentence of nine years.

### A. Mitigating Factors

First, the appellant argues that his assistance in providing the names of other perpetrators should be accounted for in mitigation. Tenn. Code Ann. § 40-35-113(9). Upon *de novo* review, we find that any error the trial court may have committed in not applying this factor is inconsequential because the factor merits little or no weight. The appellant only provided this information after his arrest in a feeble attempt to cast the blame elsewhere and to exculpate himself from the more egregious acts of the incident. Moreover, his assistance to law enforcement authorities was minimal as the record fails to show that this information led to additional arrests or convictions. Likewise, we fail to find as mitigating evidence the appellant's voluntary surrender to the police. By the time the appellant turned himself in to police custody, he had already been named as a suspect, a warrant had issued against him, and law enforcement officers had already made an attempt to serve the warrant.

The appellant also asserts that he committed the offense under such unusual circumstances that it is unlikely a sustained intent to violate the law motivated his conduct. Tenn. Code Ann. § 40-35-113(11). We find no proof in the record to support this claim. The appellant admitted to law enforcement authorities that he "got in line" to participate in the activities. Similarly, although the victim admitted that the appellant attempted to console her in the bathroom, this attempt was only made after the appellant had forcefully penetrated her and was accompanied by additional sexual groping. In sum, we place no redeeming or mitigating value upon these acts for sentencing purposes. Accordingly, the appellant has failed to demonstrate error

13

by the sentencing court.

## B. Weighing of Enhancement Factors

When there are enhancement factors and no mitigating factors, the trial court may set the sentence above the minimum within the applicable sentencing range, but still within the range. Tenn. Code Ann. § 40-35-210(d) (1990). The appellant was convicted as a range I offender of a class B felony. Thus, the sentence range for the appellant is eight to twelve years for the rape conviction. See Tenn. Code Ann. § 40-35-112(a)(2) (1990). The court imposed a sentence of nine years for the rape conviction. We find the length of this sentence to be justified and not excessive under the guidelines of the 1989 Sentencing Act. This issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES,  Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
JOHN EVERETT WILLIAMS, Judge