IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2005

## ERIC B. BLAKEMORE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27036     Bernie Weinman, Judge**

_____

**No. W2004-01578-CCA-R3-PC  - Filed September 12, 2005**

_____

The petitioner appeals the denial of his post-conviction petition, in which he asserted that trial counsel was ineffective in: (1) failing to secure an independent mental evaluation; and (2) failing to demand a speedy trial. Upon review, we conclude that the evidence does not preponderate against the findings of the post-conviction court; therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Eric B. Blakemore.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner, Eric Blakemore, was convicted by a Shelby County jury of one count of second degree murder and one count of attempted second degree murder and received concurrent sentences of twenty-two years and ten years on the charges, respectively. The judgments were affirmed by a panel of this court on direct appeal. See State v. Eric B. Blakemore, No. W2001-01929-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 509 (Tenn. Crim. App., at Jackson, June 18, 2002). Thereafter, the petitioner filed a *pro se* petition for post-conviction relief; counsel was appointed to the petitioner; and an amended petition was filed. Following an evidentiary hearing, the post-conviction court denied relief by written order. The petitioner now appeals to this court, alleging that counsel was ineffective in: (1) failing to request an independent mental evaluation of the petitioner pursuant to a defense of insanity or diminished capacity; and (2) failing to demand a

speedy trial.

At the post-conviction hearing, the petitioner recalled that, on the day of his arrest, he was threatening suicide by his grandmother's grave when officers approached him and coaxed the gun away from him. Shortly thereafter, he was arrested and confessed to the crimes. The petitioner noted that he had experienced hallucinations and had attempted suicide both before and after his arrest, but it was only after his incarceration on the subject charges that he was diagnosed with depression. He stated that during that time, he was evaluated by mental health experts and had a thirty-day evaluation at a mental hospital.

The petitioner testified that he discussed the facts of the case with counsel and gave him a list of potential witnesses, which included co-workers who may have noticed a change in the petitioner's behavior in the days leading up to the murder. The petitioner further recalled that counsel discussed the State's evidence with him and obtained his medical records for review. He also noted that, although he was evaluated by court-appointed experts, he was not examined by a private doctor.

The petitioner stated that he inquired about presenting either an insanity or diminished capacity defense but that counsel stated that the mental health experts would not support them. Rather, counsel felt the petitioner's best defense was that the crime was committed in the heat of passion. The petitioner testified that he felt counsel should have arranged for an independent psychological evaluation and asserted a defense of insanity or diminished capacity on his behalf.

He acknowledged that counsel did file a motion to suppress his statement to police but further noted that the motion was denied. The petitioner recalled that he was arrested on February 18, 1998; was indicted on July 2, 1998; and that trial began on April 2, 2001. The petitioner testified that the length of time between his arrest and trial diminished his ability to recall the names and addresses of co-workers who could have testified for the defense. When asked if he requested counsel file a motion for speedy trial, the petitioner responded, "I think I did. But it might have – I might have asked one of the other attorneys. Because [counsel] came late, real late. They kept changing my attorneys up." He further explained that he was represented by four or five different attorneys throughout the course of the case and that counsel began representing him "six months to a year" before trial.

On cross-examination, the petitioner stated that he was without his medication on the first day of trial and that he had not been given his medication in the three days prior to the post-conviction hearing. He further acknowledged that he felt fine. The petitioner reiterated that he was committed to a psychiatric hospital for evaluation and that counsel expressed to him that the evaluating doctors would not support a defense of insanity or diminished capacity. He acknowledged that the initial plea offer extended by the State was a sentence of life plus fifteen years and that immediately before trial, the State extended a plea offer of life, both of which were rejected by the petitioner.

The petitioner testified that he wanted counsel to call Leslie Johnson, a co-worker, as a witness for the State but "[couldn't] say for sure" that he told counsel about her. When asked if his co-workers would have noticed a change in his behavior, he replied, "I had never talked to them [about my behavior]. But I'm pretty sure they might have. I don't know."

As the final witness at the post-conviction hearing, counsel testified that he was employed by the Shelby County Public Defender's Office and that he had handled five or six murder trials prior to the petitioner's case. He explained that he initially sat "second chair" on the case but was made lead counsel after the previous attorney left the Public Defender's Office. Counsel stated that the delay between arrest and trial was due, in part, to the fact that the petitioner was represented by several different attorneys and was also due to his multiple mental health evaluations, including a thirty-day inpatient evaluation. He recalled that the case went to trial on its first setting and further testified that he did not file a motion for speedy trial because "the State was doing [nothing] to slow the process down, other than continuing to negotiate with us on trying to settle the matter."

Counsel testified that he met with the petitioner "numerous times" prior to trial and that he went over both trial procedure and discovery with him. He stated that four mental health evaluation letters were entered in response to a court order indicating that the petitioner did not meet the criteria for either the insanity or diminished capacity defense and that the petitioner was competent to stand trial. Counsel recalled that he requested one of the four evaluations but did not request any further evaluations:

> The doctors doing the evaluation were quite familiar with [the petitioner], because he had been committed to that hospital, he was under their continuing care for a lengthy period of time.
>
> If anybody was familiar with him, it would probably, in my opinion, be able to give the best opinion regarding that, it was those doctors.
>
> Once we received their letter back saying they didn't support it all, there really wasn't a question in my mind whether we could use that defense.

Counsel stated that, because he felt the facts did not support a mental health defense, he felt the best defense was that the crime was committed in the heat of passion. He recalled that the petitioner testified at both the suppression hearing and at trial, and that the jury was made aware of the petitioner's previous suicide attempts during those proceedings. Counsel further testified that he was not given a list of witnesses the petitioner wanted called at trial but that he did call the mother of the petitioner's children to testify regarding the petitioner's mental state at the time of the offense. He also noted that he called Ms. Denessa Lowe, who was in contact with the petitioner on a daily basis.

On cross-examination, counsel acknowledged that he does not have any training or expertise in the fields of psychiatry or psychology but noted that he gained experience with mental health defenses in previous murder cases. Counsel stated that he was aware that the petitioner's mother drove him to the cemetery where he threatened suicide but that the petitioner did not want to call her as a defense witness because he did not want her to be subjected to cross-examination. He further

stated that the petitioner was an effective witness and that he testified as to "exactly what he was going through, what caused him to get the weapon in the first place, and then what led up to the circumstances of the killing." Counsel testified that the experts found the petitioner competent and felt that the mental health defenses were not supported but also recommended that he be committed for displaying suicidal tendencies while incarcerated.

Counsel testified that the trial began approximately one year after he began representing the petitioner and that it was tried on the first setting. He reiterated that the length of time between arrest and trial was due to the petitioner's hospitalization and because he was represented by several different attorneys throughout the case. Counsel further opined that the delay actually assisted the petitioner because he recalled increasing numbers of facts as their interviews progressed.

Following the hearing, the post-conviction court denied the petition and made the following findings of fact:

> The Court finds that [counsel] properly and adequately had the [petitioner] evaluated prior to trial for competency to stand trial and a defense of insanity. The Court further finds that the case was thoroughly investigated and appropriate trial strategies were fully considered.

> The Court finds that the advice given and services rendered by the [petitioner's] counsel were within the range of competency demanded by an attorney in a criminal case and that [counsel's] representation of the [petitioner] at his trial complied with the requirements set out by the Supreme Court of Tennessee in *Baxter v. Rose*, 523 S.W.2d 930.

Analysis

This court review claims of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct

falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner first claims that counsel was ineffective in failing to secure an independent mental evaluation pursuant to a defense of insanity or diminished capacity. However, at the post-conviction hearing, counsel testified that four mental health evaluation letters were entered regarding the petitioner, one of which was requested by the defense. Of those evaluations, all indicated that the mental health defenses were not supported and that the petitioner was competent to stand trial. Therefore, counsel tactically elected not to pursue a defense of insanity or diminished capacity but, rather, asserted that the petitioner committed the murders in the heat of passion. The record reflects that this strategy was successful in mitigating the conviction from the indicted offense of first degree murder to second degree murder and in securing a lesser sentence than that offered by the State immediately prior to trial. We conclude that counsel's decision to refrain from requesting another mental health evaluation and asserting a mental health defense did not amount to ineffective assistance of counsel.

The petitioner further claims that counsel's failure to demand a speedy trial was tantamount to ineffective assistance of counsel. Without question, criminal defendants are constitutionally and statutorily entitled to a speedy trial. U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9; Tenn. Code Ann. § 40-14-101. There is no set time limit within which the trial must commence; rather, consideration must be given to each case on an *ad hoc* basis. State v. Simmons, 54 S.W.3d 755, 759 (Tenn. 2001). The Tennessee Supreme Court has adopted the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), as the method for determining whether a defendant's right to a speedy trial has been violated. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). If, after conducting this balancing test, it is concluded that the defendant was in fact denied a speedy trial, constitutional principles require that the conviction be reversed and that the criminal charges be dismissed. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973).

In conducting this test, we are required to examine the conduct of both the prosecution and the petitioner, focusing primarily on: (1) the length of the delay; (2) the reason for the delay; (3)

whether the petitioner asserted his right to a speedy trial; and (4) whether the petitioner was prejudiced by the delay. Wood, 924 S.W.2d at 346; Bishop, 493 S.W.2d at 84; State v. Jefferson, 938 S.W.2d 1, 12-13 (Tenn. Crim. App. 1996). The most important factor is whether the defendant was prejudiced by the delay. Simmons, 54 S.W.3d at 760; State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994). The most important inquiry, with regard to prejudice, is whether the delay impaired the petitioner's ability to prepare a defense. Id.

The triggering factor is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S. Ct. at 2192. "Such a delay must approach one year to trigger" analysis of the remaining factors; however, "the line of demarcation depends on the nature of the case." State v. Utley, 956 S.W.2d 489, 494 (Tenn. 1997); State v. Vickers, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997).

We initially note that the delay, in excess of three years, is sufficient to trigger the four-part Barker analysis. However, the length of the delay alone is not enough to find a speedy trial violation but must be viewed in light of the remaining three factors: the reason for the delay, the petitioner's assertion of the right, and whether the petitioner suffered actual prejudice. Taking the remaining factors in order, the reasons for the delay can be placed in one of the following categories:

> (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. The first type, intentional delay, is weighed heavily against the State. The second type, negligent delay, is also weighed against the State although not as heavily as deliberate delay. The third type of delay is, by definition, justifiable and is not weighed against either party. The fourth type of delay, which is caused or acquiesced in by the defendant, is weighed against the defendant.

Wood, 924 S.W.2d at 346 (footnotes omitted).

At the post-conviction hearing, counsel testified that the delay in bringing the case to trial was due to the multiple mental health evaluations that the petitioner underwent, one of which was a thirty-day inpatient hospitalization; the appointment of several different attorneys because of turnover in the Public Defender's Office; and the prolonged plea negotiations that continued up to the point of trial. Counsel further stated that the case was heard on the first trial setting and that "the State was doing [nothing] to slow the process down, other than continuing to negotiate with us on trying to settle the matter." In our view, the reasons for the delay fall into the third category as necessary to the fair and effective prosecution of the case and, therefore, do not weigh against either party.

The next factor to consider is whether or not the petitioner asserted his right to a speedy trial. "A defendant's assertion of the speedy trial right is entitled to strong evidentiary weight in determining whether the right has been denied, and failure to assert the right will make it difficult to prove it was denied." Id. at 347 (citations omitted). In the present case, there is nothing to

indicate that the petitioner asserted his right to a speedy trial at any time prior to the filing of his post-conviction petition. When asked if he requested counsel file a motion for speedy trial, the petitioner responded, "I think I did. But it might have – I might have asked one of the other attorneys." Further, as we have previously noted, counsel stated that he did not file a motion for speedy trial because he did not feel that the State was contributing to the delay and because the case was heard on the first trial setting.

The last factor to consider is whether the petitioner suffered any prejudice from the delay. At the post-conviction hearing, the petitioner testified that the delay impeded his ability to recall the names and addresses of co-workers who may have been able to testify as to his mental state before the murders. However, had it been necessary, this information could have been obtained with minimal effort by contacting the petitioner's employer or consulting the business's personnel records. As such, we conclude that the delay did not hinder the petitioner's ability to prepare a defense and did not result in prejudice.

For the same reasons, we conclude that counsel's failure to demand a speedy trial was not tantamount to ineffective assistance of counsel. As we have noted, the record reflects that the delay was not attributable to any intentional or negligent act or omission by the State but was necessary for a fair and effective prosecution of the case. Therefore, counsel's failure to demand a speedy trial did not constitute deficient performance. Moreover, the omission did not prejudice the petitioner, as the information that he claimed he could no longer remember could have been easily obtained by other means. Therefore, a demand for speedy trial was not necessary and did not affect the outcome of the trial. Having failed to meet either prong of the Strickland test, we must conclude that the petitioner has failed to prove that counsel was ineffective in this regard.

Conclusion

The post-conviction court's denial of relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7-