# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 30, 2007

## STATE OF TENNESSEE v. JAMES ALAN BATES

**Appeal from the Criminal Court for Sullivan County**
**No. C51,417      Phyllis H. Miller, Judge**

---

**No. E2007-00187-CCA-MR3-PC - Filed February 21, 2008**

---

The Appellant, James Alan Bates, appeals the order of the Sullivan County Criminal Court denying his petition for post-conviction relief in which he asserted ineffective assistance of counsel. Bates contends that trial counsel was ineffective based upon the following: (1) failing to call a DNA expert as a witness at trial; (2) failing to utilize an investigator to aid in locating potential defense witnesses; (3) failing to adequately communicate and report developments in preparation of the defense at trial and on appeal; (4) failing to file a motion for a speedy trial; and (5) failing to provide "street clothes" for incarcerated defense witnesses, who testified while wearing their jail uniforms. After review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

J. Carter Massengill, Bristol, Tennessee, for the Appellant, James Alan Bates.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The facts of this case were stated by this court on direct appeal as follows:

> Amanda Herron, the victim in this case, testified that she was spending the night of August 27, 2001, with the Defendant in his trailer. While she had used illegal drugs in the past, she stated that she had not used any such substances on the day or night in question. When she went to bed at about eleven p.m., the Defendant was on the couch. When she got up some time later to go to the bathroom and get a drink of water, the Defendant was still on the couch, asleep. He had a beer in one

hand and a pill bottle in the other.  Ms. Herron went back to bed without disturbing the Defendant.

The next thing she knew, Ms. Herron awoke to the Defendant pulling her hair and yelling at her.  She testified that the Defendant yelled, "Bitch, what did you do with my shit?"  Ms. Herron assumed that the Defendant was referring to his drug of choice, Oxycontin, or money.  Ms. Herron told the Defendant that she did not know what he was talking about, but he pulled her out of bed by her hair and into the hallway, all the while repeating his question.  Ms. Herron testified that the Defendant was "very loud and angry" and that she had never seen him like that before.  The Defendant took the victim into the living room, where she searched the couch for pills.  She found none, and the Defendant dragged her into the bathroom, still holding her hair.  The Defendant told the victim, who was wearing shorts, a tee-shirt, bra and panties, to strip so that he could search her.  The victim removed her shirt, and the Defendant then removed her shorts and panties; he also searched under her bra.  Finding no drugs in her clothes, the Defendant inserted his fingers into the victim's vagina and rectum.  Still not finding what he was looking for, the Defendant produced a pistol and hit the victim's face with it.

The Defendant then made the victim lie down, and he tied her hands and feet.  Ms. Herron testified that she was "very scared" and begged the Defendant to stop.  After tying her up, the Defendant again struck the victim in the face with the gun.  He then put the gun in her mouth and threatened to blow her brains out.  He followed this action with placing the barrel of the gun in the victim's vagina, threatening to blow her guts out.

In order to escape the Defendant, Ms. Herron told him that she had put his stuff in her truck.  When he left the trailer to go check, Ms. Herron managed to free her feet and jumped out of a window, knocking the screen out.  She ran to the trailer next door and beat on the door with her elbow, screaming for help and for someone to call the police.  While she was doing this, the Defendant came up behind her, grabbed her by her hair and dragged her back to his trailer.  He struck her with the gun again and tied her hands and feet again.  He then burned her with a cigarette and pinched her body in various places with a pair of pliers.  Eventually, the Defendant became tired and lay down beside her, tying her to him and placing the gun on his chest.  After he fell asleep, the victim was able to free herself sufficiently to escape.  She ran to a nearby store, and the police were contacted.  She was taken to the hospital and later photographed by Detective Penney Kendal.

. . . .

-2-

Det. Penney Kendal testified that she saw the victim at about eight o'clock in the morning on August 28, 2001. She described the victim as "very distraught, tired, scared." She described the victim's physical condition as follows:

> Her eyes were swollen, her eyelids were black and blue and purple, her lips . . . were great big swollen, protruding red, dried blood on them. She had a very large and long deep tissue bruise across the right [arm], by the triceps and biceps, black, blue, very deep, long approximately two inches thick. She had ligature marks around both wrists. There was still a piece of some type of twine around one wrist. Her hands were swollen, red scratched, bloody. She had a burn mark on her arm. Just various nicks and bruises and fresh marks all up and down her arms. Her knees and legs were scraped up. One leg had a very long scrape, bloody abrasion. There [were] ligature marks around her ankles. Her feet and legs appeared swollen especially around the ligature marks. . . . [S]he had a few little pieces of hair missing. There were scratches on her buttocks, in the buttocks area, and there were some little pieces of skin, nicks and scratches on her back.

. . . .

Detective David Cole also saw the victim that morning. He described the binding around her wrist as very tight, requiring that it be cut off. He executed a search warrant of the Defendant's trailer later that afternoon. There, he found in a garbage bag "various items of clothing and ropes and twine that [were] tied together." The couch cushions were scattered. He found a bra, pair of pants and shirt in a trash can in the kitchen. The bra had a thick shoestring knotted on it. Det. Cole found what appeared to be bloodstains on the bathroom floor, the bedroom doorknob and on a section of carpet. He took samples from each of these locations. When the Defendant was apprehended, he was carrying a pillowcase containing a loaded .22 revolver and several pills. Det. Cole later oversaw blood samples being drawn from both the Defendant and the victim.

Agent Kelvin Woodby of the TBI crime lab testified as an expert in DNA serology. He examined the samples taken from the bedroom doorknob and carpet and determined the presence of the victim's blood. He identified a mixture of DNA from the bathroom floor, of which the victim was a major contributor and the Defendant a possible contributor.

. . . .

-3-

The Defendant recalled Det. Kendal, who testified that the victim had pending charges for attempt to commit aggravated robbery and robbery. She stated that the victim had confessed the robbery, a purse snatching, to her, and that she believed that the victim had been truthful to her about committing the crime.

Tanya Tunnell testified that she had known the Defendant and the victim for several years. She stated that she went by the Defendant's trailer at about two o'clock on the morning of August 28, 2001, and found the Defendant and victim both there. There was nothing wrong with the victim. Ms. Tussell stayed about thirty to forty-five minutes. She remembered the day because of the Defendant's arrest later that afternoon. Ms. Tussell stated that the Defendant "didn't do Oxycontins."

Rachel Cross testified that she had been friends with the victim, and did not know the Defendant. She stated that the victim told her in June 2002 that, with respect to her sexual preferences, the victim "liked to be tied up and held down." Ms. Cross also testified that the victim had told her that she had not actually been penetrated with the gun.

John McBee testified that he had had a sexual relationship with the victim in late 2001. He stated that, after they had been together about three weeks, they had been "getting ready to have sex," and the victim asked him if he would like to tie her up. He told her no, and she did not ask him about it again.

*State v. James Allen Bates*, No. E2003-01475-CCA-R3-CD (Tenn. Crim. App. at Knoxville, May 7, 2004), *perm. to app. denied*, (Tenn. Nov. 15, 2004). A jury convicted the Appellant of two counts of especially aggravated kidnapping, three counts of misdemeanor assault (which the trial court merged into a single count), one count of possession of a firearm by a convicted felon, one count of felony evading arrest, and one count of simple possession of marijuana. The sentences were run concurrently, except for the felony evading arrest conviction, which was imposed consecutively, and the Appellant was ordered to serve an effective sentence of forty-six years in the Department of Correction.

On direct appeal to this court, the Appellant challenged the sufficiency of the evidence supporting his convictions for especially aggravated kidnapping and the trial court's decision to sentence him as a Range Two, multiple offender on those offenses. *Id*. This court affirmed the judgments of the trial court. *Id*. The Appellant subsequently filed a *pro se* petition for post-conviction relief, asserting ineffective assistance of counsel. The Appellant was appointed post-conviction counsel, who filed an amended petition for post-conviction relief. An evidentiary hearing was held in the post-conviction court on June 12, 2006. On August 10, the post-conviction court entered an order denying the Appellant's petition. The Appellant appeals this order of the post-conviction court.

**Analysis**

In order to prevail on a post-conviction petition, the petitioner must establish that his conviction or sentence is void or voidable due to the abridgement of a constitutional right. T.C.A. § 40-30-103 (2003); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminally accused the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The United States Supreme Court and our supreme court have each recognized that the right to such representation encompasses the right to "reasonably effective" assistance, that is within the range of competence demanded of attorneys in criminal cases. *Id.* To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990)). Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002).

To prove a deficiency in representation, the petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065; *Goad*, 938 S.W.2d at 369; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586 (1986).

Where a claim of incompetency of counsel is alleged, this court will not reverse the finding of the trial judge dismissing such petition if the action of trial counsel was based upon legitimate trial tactics and strategy. *State v. Martin*, 627 S.W.2d 139 (Tenn. Cr. App. 1981). However, if the record shows the action of trial counsel, in the circumstances shown, has no rational or logical basis, then the legitimacy of the tactics employed must be scrutinized under the requirement of *Baxter v. Rose*. *State v. Buford*, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Burns*, 6 S.W.3d 453 at 461. A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App.

P. 13(d)). However, a trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions. *Id*.

## I. Failure to Call DNA Expert at Trial

The Appellant argues that trial counsel was ineffective for failing to obtain a DNA expert for the defense. He asserts that, despite counsel's knowledge that some of the results of the State's DNA analysis would be exculpatory, he did not call a DNA expert for the defense. According to the Appellant, the expert could have not only been used to impeach the State's DNA expert, but could have further bolstered the defense.

The Appellant did not present a DNA expert at the hearing for post-conviction relief. This court has held:

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.

*Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Anthony H. Dean v. State*, No. W2005-02319-CCA-R3-PC (Tenn. Crim. App. at Jackson, Dec. 7, 2006) (concluding that a petitioner's claim of ineffective assistance lacked merit because trial counsel effectively cross-examined the State's DNA expert at trial, the petitioner failed to present a DNA expert at the post-conviction hearing, and the petitioner failed to avail himself of the post-conviction court's offer to have his DNA tested).

Additionally, trial counsel testified at the hearing that the DNA evidence relied upon by the State was largely inconclusive as to the victim's assertions regarding the kidnapping and rape charges. He stated that, based upon his review of lab results provided by the State in discovery, he believed that an independent DNA expert was not necessary. He opined that "the way we went about it was the better way" because "[w]e ended up getting to use [the State's] own expert and say that their own findings were inconclusive." For example, trial counsel was able to establish that "where [the victim] had indicated that she had been penetrated with the gun there was no indication of any

type of DNA on the gun," and he cited the jury's not guilty verdict on the rape charge corresponding with these allegations as evidence of his effective representation on this issue.

The post-conviction court accredited the testimony of trial counsel that "he reviewed the DNA results and decided no defense expert was needed because he could make the point with the State's own expert witness that the State's DNA analysis did not support the victim's claims regarding the kidnapping and rape." The record clearly supports these findings. The post-conviction court concluded that the Appellant failed to establish deficient performance or prejudice as to this claim. We agree with the result reached by the post-conviction court on this issue, and, accordingly, we conclude that the Appellant's claim is without merit.

## II. Failure to Hire Investigator to Aid in Locating Potential Defense Witnesses

The Appellant argues that trial counsel's assistance was ineffective for failing to utilize an investigator that would help locate potential witnesses which the Appellant requested in preparation for trial. Specifically, he states trial counsel failed to speak with five individuals and asserts that they would have testified regarding the victim's prior sexual practices, "establishing that the sex acts were likely consensual, that [the victim] liked to be tied up, and that she was scamming the [Appellant] and the State of Tennessee in order to receive money from a rape restitution fund." The State responds that the failure of the Appellant to call these enumerated witnesses at the post-conviction hearing undermines his argument on this claim.

At the post-conviction hearing, trial counsel testified that he was unable to contact certain witnesses recommended by the Appellant, but he managed to find others that would provide similar testimony. Trial counsel filed a motion, pursuant to Rule 412 of the Tennessee Rules of Evidence, prior to trial, and a hearing was held at which Rachel Cross, John McBee, and the Appellant testified regarding alleged prior sexual activity and practices of the victim. At trial, the Appellant was advised of his *Momon* rights and opted not to testify. Based upon their testimony elicited at the pre-trial hearing, however, the trial court permitted both Cross and McBee to testify regarding these matters at trial, as previously summarized by this court on direct appeal. *State v. James Allen Bates*, No. E2003-01475-CCA-R3-CD.

Holding that this claim was without merit, the post-conviction court found:

[Trial counsel]'s trial strategy resulted in the jury's rejecting three charges of aggravated rape, a Class A felony, and finding the [Appellant] guilty only of the much lesser offense of assault causing bodily injury, a Class A misdemeanor. In the Court's opinion, the photos of the victim taken at the police department the morning of the attack were so compelling that even though the jury might have found she initially consented to being tied up, she did not consent to the extent of the restraint and the physical injuries she suffered. Even if the defense had called five witnesses, instead of two, to testify that the victim liked rough sex and liked to be tied up, the Court does not believe the jury would have reached a different verdict, considering

the photos and the neighbor's testimony corroborating the victim's account of events. Of course, as noted previously, the [Appellant] did not present any evidence to the Court that any other witness would so testify.

The record supports the findings of the post-conviction court on this issue. Moreover, the Appellant's failure to call any of these aforementioned witnesses to testify at the post-conviction hearing is particularly significant. Again, under such circumstances, this court cannot speculate or guess what a witness's testimony might have been if introduced by defense counsel. *See Black*, 794 S.W.2d at 757. As the Appellant failed to establish deficient performance or prejudice as to this issue, we conclude that it is without merit.

## III. Failure to Sufficiently Meet with the Appellant

The Appellant further alleges that trial counsel was ineffective because he only met with him in his jail cell once for thirty minutes in an alleged period of twenty months when he was in jail prior to trial. The Appellant acknowledges that trial counsel spoke with him on the phone approximately ten times during this period and that trial counsel met with him in a holding cell beside the courtroom for approximately five minutes before every court appearance. However, he alleges that this contact was insufficient in a case involving Class A felonies to have conducted a proper investigation or to have prepared for trial. The State contends the proof establishes that trial counsel had no difficulty obtaining witness lists from the Appellant or filing motions on his behalf and, further, that trial counsel visited the scene of the crime and interviewed at least one witness there. It further notes that the Appellant has failed to specify, as to this claim, what specific omissions of trial counsel resulted in representation that fell below an objective standard of reasonableness under prevailing professional norms.

At the post-conviction hearing, trial counsel did not dispute the Appellant's assertion that he met with him in his jail cell on only one occasion prior to trial. The parties also agreed, however, that trial counsel spoke with the Appellant on the phone approximately ten times in preparing for trial, and they further convened to discuss the case in a holding cell area in the courthouse before court appearances by the Appellant. Trial counsel testified that he actually preferred to meet with his clients in the holding cell area because he believed it was more convenient and private than a jail visit. The post-conviction court found that the Appellant "presented no credible evidence that the result [of the case] would have been different . . . if [trial counsel] had done anything differently." We agree that the Appellant has failed to allege specific omissions of trial counsel that would constitute a lack of preparation or investigation in this case. As the Appellant failed to offer clear and convincing evidence to support a conclusion that trial counsel's performance was deficient or prejudicial to the defense, we conclude that this issue lacks merit.

## IV. Failure to File a Motion for Speedy Trial

The Appellant further argues that trial counsel's failure to file a motion for a speedy trial constituted deficient performance. In support of this claim, he alleges resulting prejudice because,

had he filed the motion, "the defense witnesses may have been available for trial and the State may not have been able to present their DNA expert testimony as the evidence was taking a long time to come back." The State responds that the delay in trial resulted from trial counsel awaiting the State's DNA, results which were ultimately inconclusive as to the Appellant. The State argues that the Appellant failed to show that such a strategy constituted deficient performance or that prejudice resulted from the delay or failure to file such motion.

Both Article I, section 9 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution guarantee the right to a speedy trial. The right to a speedy trial in criminal prosecutions is also statutory in Tennessee. *See* T.C.A. § 40-14-101 (2003). The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial. *United States v. Loud Hawk*, 474 U.S. 302, 310-12, 106 S. Ct. 648, 653-54 (1986); *State v. Vickers*, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997).

When a defendant contends that he was denied his right to a speedy trial, the reviewing court must conduct a four part balancing test to determine if this right was, indeed, abridged. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). This test includes consideration of: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the actual prejudice suffered by the defendant because of the delay.[1] *Id.* Of these factors, and crucial to supporting a claim for ineffective assistance of counsel, the single most important factor is prejudice to the defendant, and the critical inquiry concerning prejudice "is the impairment of the ability to prepare a defense." *State v. Vance*, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994).

The length of the delay between indictment and trial is a threshold factor, and, if that delay is not presumptively prejudicial, the other factors need not be considered. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. The delay in the present case was, at most, approximately twenty months. While the length of the delay, in and of itself, does not constitute a denial of a speedy trial given the complex nature of the charges, a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Vickers*, 985 S.W.2d at 5 (citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 2691, n.1 (1992)). Thus, the delay in this case requires further review.

Next, we inquire as to the reasons for the delay. Possible reasons for the delay are said to fall within four identifiable categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. *State v. Wood*, 924 S.W.2d 342, 346-47 (Tenn. 1996). Trial counsel testified at the post-conviction hearing that the delay benefitted the defense, as it was largely attributable to waiting for the State's DNA results, which he believed would be exculpatory and favorable to the defense. Thus, the delay appears to have been both necessary to the fair and effective prosecution of the case,

---

[1] In *State v. Bishop*, 493 S.W.2d 81 (Tenn. 1973), our supreme court implicitly adopted the *Barker* balancing test for purposes of our state constitutional and statutory right to a speedy trial.

as well as acquiesced in by the defense as a tactical advantage. As found by the trial court, and further confirmed by our review of the record, the DNA results were largely inconclusive.[2] Given the evidence of the case from the attorney's perspective at the time, we conclude that a reasonable attorney could have adopted this strategy. *See, e.g., Mario Deangalo Thomas v. State*, No. W2004-01704-CCA-R3-PC (Tenn. Crim. App. at Jackson, July 18, 2005); *Marcus Epps v. State*, No. W2004-00152-CCA-R3-PC (Tenn. Crim. App. at Jackson, July 12, 2004).

Regarding the defendant's assertion of his right to a speedy trial, trial counsel testified at the post-conviction hearing that the Appellant "expressed an opinion that he wanted a fast and speedy trial." He recalled telling the Appellant that he did not believe such a motion would be successful. Additionally, he was strategically disinclined to pursue this motion based upon his opinion that the DNA results would actually benefit the defense.

As to actual prejudice, the Appellant alleges that, had he been tried sooner, he "might not have lost witnesses" and "the State may not have been able to present their DNA expert testimony as the evidence was taking a long time to come back." The post-conviction court found that there was no evidence that any witnesses died or otherwise became unavailable because the trial did not occur sooner. The record supports this finding. Additionally, the Appellant was ultimately acquitted of the charges of aggravated rape, a Class A felony, and the jury instead found the Appellant guilty of the lesser offenses of misdemeanor assault. The Appellant has failed to identify actual prejudice to the defense as a result of the delay in this case, a crucial factor under the *Barker* inquiry.

After review, we conclude that the Appellant failed to carry his burden on this issue and that the post-conviction court correctly denied his petition as to this issue.

## V. Failure to Provide Street Clothes for Incarcerated Defense Witnesses

Rachel Cross and Johnny McBee, who were incarcerated at the time of trial, were called as defense witnesses to testify regarding the sexual practices and preferences of the victim. The Appellant argues that these witnesses, who testified while wearing jail attire, should have been provided street clothes by trial counsel prior to taking the stand. He observes that the victim, who allegedly was also incarcerated at the time of trial, was allowed to testify in street clothes. The Appellant argues that, had trial counsel obtained street clothes for his witnesses, they would have appeared more credible to the jury.

In response, the State argues that the proof establishes that the Appellant never discussed this issue with trial counsel and that, regardless, this court could only speculate as to whether there was

---

[2] The DNA report indicated that the testing of the revolver, alleged to have been placed in the victim's mouth and vagina, failed to reveal the presence of saliva or body fluids. The amount of DNA collected from the gun was deemed insufficient for testing. Testing of blood stains at the Appellant's residence revealed the existence of DNA of the victim. Swabs of the bathroom floor at the Appellant's residence revealed a mixture of genetic material, of which the victim was determined to be a major contributor. It was determined that the Appellant "could not be excluded as the minor contributor" of this material.

deficient performance in this regard. We agree. The post-conviction court noted that the Appellant "never claimed that he had any discussion with [trial counsel] about this issue although the same witness-inmates testified at the Rule 412 hearing." The transcript of the post-conviction hearing supports this finding. In light of this fact, as well as the jury's rejection of the charges of aggravated rape, we must conclude that the Appellant has failed to establish that the particular attire of the testifying witnesses was attributable to any deficient aspect of trial counsel's performance or that the Appellant was in any way prejudiced by the appearance of these individuals at trial. Accordingly, this issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of the Sullivan County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE