IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1999 SESSION

FILED

October 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9802-CR-00076 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. SETH NORMAN, |
| PATRICK THURMOND, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Burglary, |
| | ) | Aggravated Rape - 2 Counts, |
| | ) | Attempted Aggravated Rape, |
| | ) | Aggravated Sexual Battery) |

FOR THE APPELLANT:

JAMES ROBIN McKINNEY, JR.
214 Second Avenue North
One Washington Square, Suite 103
Nashville, TN 37201-1647
(On Appeal)

TERRANCE E. McNABB
430 Third Avenue North
Suite 200
Nashville, TN 37201-1105
(At Trial)

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON III
District Attorney General

KYMBERLY H. HAAS
Assistant District Attorney General
222 Second Avenue North
Washington Square, Suite 500
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

JOE G. RILEY, JUDGE

**OPINION**

A Davidson County jury convicted defendant of aggravated burglary, a Class C felony; two counts of aggravated rape, Class A felonies; attempted aggravated rape, a Class B felony; and aggravated sexual battery, a Class B felony. The trial court sentenced defendant to sentences of three years for aggravated burglary, twenty years for each aggravated rape, ten years for attempted aggravated rape, and ten years for aggravated sexual battery. The trial court imposed consecutive sentencing for the two aggravated rapes and the attempted aggravated rape resulting in an effective fifty-year sentence. In this appeal as of right, defendant raises the following issues for our review:

1.  whether the evidence was sufficient to support the verdicts;

2.  whether the trial court correctly denied his motion *in limine* seeking to ensure the presence of other African-American males in the courtroom during in-court identifications;

3.  whether the trial court erred in allowing the introduction of fiber evidence;

4.  whether the trial court correctly allowed the jury to view the photo lineup;

5.  whether the trial court correctly ruled that a detective's notes were not <u>Jencks</u> material;

6.  whether defendant was denied a speedy trial;

7.  whether the trial court erred by not giving the eyewitness identification jury charge; and

8.  whether the trial court imposed an excessive sentence.

After a complete review of the record, we find no reversible error and **AFFIRM** the judgment of the trial court.

## I. FACTS

On September 8, 1994, Ana Paulo Majano worked as a housekeeper for the Drury Inn. At about 9:00 a.m., while cleaning the bathroom of a fourth-floor room, she heard a noise from the sleeping area. She found a man standing in the room's sleeping area. He wore a black shirt, long black shorts, black gloves, and held a pistol. The man tried to speak to Majano, but she does not understand any English.

When Majano tried to escape, defendant grabbed her by the shirt and put the gun to her head. Then, he threw her on the bed and put a pillowcase over her head. He raped her by performing cunnilingus and penetrating her vaginally with his penis. When he tried to put his penis in her mouth, she pushed him away. He also kissed her on her breasts. Trial testimony established that the attack lasted between one and 1½ hours. Majano later identified defendant as her attacker.

The assault ceased when fellow Drury Inn staff members, Leah Adams and Lourdes Rivera, banged on the door and called out to Majano. Defendant motioned for Majano to re-dress while he did the same. While Adams and Rivera tried to open the hotel room door, defendant opened the door and pushed his way between the women.

Rivera chased defendant down the steps and around the building to a restaurant parking lot behind the hotel. When she accused him of raping Majano, defendant replied, "she gave it to me." Rivera watched defendant get into a gray Chevrolet Corsica and memorized the license plate number as defendant drove away. Rivera related the number "099 JKB" to a hotel manager who, in turn, related it to police. When asked by Detective Danny Baxter for the number from memory, Rivera related the number "099 JKF." Baxter found that "099 JKF" was registered to the wrong type of car, but confirmed that "099 JKB" was the plate number of a Corsica registered in defendant's name.

3

Earlier that morning, Lynn King, a housekeeper at nearby Days Inn saw a man, wearing all black clothing, roaming the halls of that hotel. She and other housekeepers had seen the same man, in the same clothing, lingering around the hotel a couple of weeks earlier. King identified defendant as the man she saw.

Detective Baxter interviewed the victim and several witnesses. Based upon the physical descriptions and the owner registration information derived from the license number given by Rivera, Baxter put together a photo lineup which included the defendant. Ana Paulo Majano, Lourdes Rivera, and Lynn King identified defendant as the perpetrator from that lineup.[1]

Baxter secured a search warrant for defendant's residence where he collected items of clothing thought to be associated with the rape of Majano. Analysis of that clothing by the Tennessee Bureau of Investigation (TBI) crime laboratory revealed fiber on the victim's clothing that was consistent with a fiber on the defendant's clothing.

The defendant did not testify at trial.

Based upon the evidence introduced at trial, the jury convicted the defendant of aggravated burglary, two counts of aggravated rape (cunnilingus and penile penetration), attempted aggravated rape (fellatio), and aggravated sexual battery.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, defendant challenges the sufficiency of the evidence used to convict him. Specifically, he claims the lack of physical evidence and the victim's

---

[1]Kristin Fletcher, another Days Inn housekeeper, identified defendant as the man she saw lingering around the hotel in August 1994. Another Days Inn housekeeper apparently picked someone other than defendant from the lineup; two other witnesses made no identification at all.

4

failure to identify defendant as her assailant signifies a failure by the state to carry its burden of proof.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We do not reweigh or reevaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the defendant's burden to show this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Evaluation of witnesses' credibility, the weight and value to be given to the evidence, and resolution of factual issues raised by the evidence is left to the trier of fact. Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the state's witnesses, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

As for the lack of physical evidence such as semen, body fluids, and hairs, a vaginal swab taken from the victim during a medical-legal examination (MLE) produced some seminal fluid. However, the sample was insufficient for purposes of DNA analysis.

A florescent light scan revealed the possible presence of semen on the victim's panties which might have provided a sufficient sample for testing. However, misplacement of the panties by the hospital precluded analysis by the TBI.

Nonetheless, contrary to defendant's assertion, the victim did make positive photo lineup and in-court identifications of defendant, as did Lourdes Rivera and Lynn King. The victim identified defendant as the man who raped and sexually assaulted her at gunpoint; Rivera identified defendant as the man she pursued away from the hotel room where Majano was raped; and King identified defendant as the man she witnessed lingering at the nearby Days Inn. The license plate number provided by Rivera linked the type of car driven by the assailant to a car registered in defendant's name. Other eyewitnesses gave consistent descriptions of defendant's physical features and clothing.

Taken in the light most favorable to the state, this evidence is more than sufficient to support the defendant's convictions for aggravated burglary, two counts of aggravated rape, attempted aggravated rape, and aggravated sexual battery.

This issue is without merit.

### III. IN-COURT IDENTIFICATIONS

Defendant assigns as error the trial court's denial of his request to have other African-American males present when witnesses made their in-court identifications. Defendant claims the victim failed to make any out-of-court identification prior to trial. He further claims to have been the only African-American male in the courtroom when the witnesses made their in-court identifications. This, defendant argues, caused the in-court identification process to be unduly suggestive which gave rise to a substantial likelihood of misidentification. He advocates the application of the five-factor test established by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to reach a finding that the in-court identifications violated his due process rights.

First, we note that there is nothing in the record that indicates the trial court refused defendant the opportunity to have other African-American males in the courtroom at the time of the in-court identifications. The record reflects neither a written denial nor an oral denial. Furthermore, defense counsel offered no contemporaneous objections to the in-court identifications.

Second, contrary to defendant's assertion, the victim did make an out-of-court photo identification prior to trial, as discussed above.

Third, the record is devoid of information regarding the racial make-up of the courtroom audience. Defendant does not cite to any place in the record that supports his allegation that he was the only African-American in the courtroom at the time of the in-court identifications. When no evidence is preserved in the record for review, we are precluded from considering the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

Nevertheless, *assuming* the trial court did deny defendant's motion, and *assuming* that defendant was the only African-American male in the courtroom, denial of the motion was not an abuse of discretion. A trial court has the inherent power to supervise and control its own court proceedings. State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994); State v. Bragan, 920 S.W.2d 227, 239 (Tenn. Crim. App. 1995). Defendant has failed to demonstrate prejudice.

This issue is without merit.

## IV. FIBER EVIDENCE

Defendant also assigns as error the trial court's denial of his motion requesting the prosecution be prohibited from introducing fiber evidence. In his

brief, defendant charges the state with failure to disclose information through the pre-trial discovery process and cites to Tenn. R. Crim. P. 16(a)(1)(d) and 16(c).

As the motion *in limine* was filed eight days prior to trial, clearly defendant was aware pre-trial that the state intended to introduce fiber evidence. Furthermore, our reading of the trial transcript reveals no contemporaneous objection to TBI Agent Linda Littlejohn's expert testimony regarding the fiber evidence in this case.

This issue simply reflects a pre-trial discovery dispute. Given defense counsel's thorough cross-examination of Littlejohn, it is apparent that defendant suffered no prejudice from the evidence's late disclosure and admission.

This issue is without merit.

## V. PHOTO LINEUP

Defendant next argues that the trial court erred in allowing the jury to view the photo lineup containing defendant's photograph. He claims the obvious use of "mug shots" gave rise to a prejudicial inference of a criminal history.

The lineup contained front-view and side-view photographs of six individuals, including defendant. All the photographs were "mugshots," and trial counsel made no objection to the lineup's exhibition to the jury. There is no prejudice.

This issue is without merit.

8

## VI. <u>JENCKS</u> MATERIAL

Defendant contends the trial court erred in finding notes taken by Detective Baxter during Ana Paulo Majano's interview did not qualify as <u>Jencks</u> material subject to discovery under Tenn. R. Cr. P. 26.2(a).

Rule 26.2(a) provides that:

> After a witness other than the defendant has testified on direct examination, the trial court, on motion of a party who did not call the witness, shall order the [non-moving] attorney . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Investigative notes made in the course of a witness interview do not fall within the requirement of Rule 26.2(a) where they are not a "substantially verbatim recital" of a witness' oral statement under Rule 26.2(g). <u>State v. Payton</u> 782 S.W.2d 490, 494-95 (Tenn. Crim. App. 1989).

During his taped interview of Majano, Baxter took investigative notes. A copy of the taped interview was provided to defendant. Appropriately, the trial court denied defendant's request for Baxter's notes. Further, there is nothing to indicate that the notes contained anything exculpatory. The trial court did not err, and no prejudice inured to defendant.

This issue is without merit.

## VII. SPEEDY TRIAL

Defendant complains in his next issue that the state denied him his

constitutional right to a speedy trial, and that he was prejudiced by the delay. Specifically, defendant charges that the delay between his indictment and trial resulted in the prejudicial loss of crucial evidence.

Without question, criminal defendants are constitutionally and statutorily entitled to a speedy trial. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-14-101. There is no set time limit within which the trial must commence; rather, consideration must be given to the circumstances of each case. The Tennessee Supreme Court has adopted the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) as the method for determining whether a defendant's right to a speedy trial has been violated. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981); State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973). If, after conducting this balancing test, it is concluded that the defendant was in fact denied a speedy trial, constitutional principles require that the conviction be reversed and the criminal charges dismissed. State v. Bishop, 493 S.W.2d at 83. The triggering factor is the length of the delay. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker v. Wingo, 407 U.S. at 530.

Defendant's brief summarily states that he experienced a "lengthy pre-trial detention," that the "[s]tate was to blame for the delay," and "[defendant] asserted his right prior to his indictment." His amended motion for new trial makes *reference* to the trial court's denial of a speedy trial motion. However, the record contains no such motion or order of denial.

It is the appellant's duty to have prepared an adequate record in order to allow a meaningful review on appeal. Tenn. R. App. P. 24. When no evidence is preserved in the record for review, we are precluded from considering the issue. Roberts, 755 S.W.2d at 836.

10

Nevertheless, assuming defendant timely asserted his right to a speedy trial, he must show he was prejudiced by the delay. State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994). The most important inquiry with regard to prejudice is whether the delay impaired the defendant's ability to prepare a defense. *Id.*

No more than fourteen months passed between defendant's arrest and trial. Defendant attributes the loss of the victim's underwear and "exculpatory" license number information to this delay. Furthermore, he claims that Detective Baxter caused the prejudicial delay of the TBI fiber analysis. We find defendant's arguments uncompelling.

First, testimony at trial showed that the victim's underwear never came into the state's possession, but was misplaced by the hospital that performed the MLE. Second, additional testimony showed the underwear might have proven detrimental to defendant, since a fluorescent light test revealed the possible presence of semen on them. Third, the license information related to law enforcement, both correct and incorrect, was sufficient to identify defendant as a suspect. And finally, as discussed above, defendant was able to prepare for the presentation of fiber evidence.

Defendant has failed to demonstrate that he suffered any prejudicial delay between arrest and trial.

This issue is without merit.

## VIII.  JURY CHARGE - IDENTIFICATION

In his next issue, defendant argues that the trial court should have given the identification jury charge promulgated by State v. Dyle, 899 S.W.2d 607 (Tenn.

1995). Defendant failed to include the jury charge in the record which precludes our review and waives the issue. Tenn. R. App. P. 24. Nevertheless, assuming the instruction was not given, we would find such failure to be harmless error.

In Dyle, the Tennessee Supreme Court formulated a jury instruction to be given in cases where identification is a material issue. The instruction provides that the state carries the burden of proving "identification of the defendant as the person who committed the crime" beyond a reasonable doubt. 899 S.W.2d at 612. It also sets forth a list of factors which the jury may consider in determining whether the state has met that burden. Those factors include:

(1)     the witness' capacity and opportunity to observe the offender;

(2)     the witness' degree of certainty and whether the identification is a product of his or her own recollection;

(3)     any occasions on which the witness failed to make an identification or made an identification inconsistent with that at trial;

(4)     any occasions on which the witness made identifications consistent with that at trial.

Id.; see also T.P.I. - CRIM. 42.05 (4th ed. 1995).

The Tennessee Supreme Court held that it is plain error not to give this instruction "when identification is a material issue and it is requested by defendant's counsel." Dyle, 899 S.W.2d at 612. If identification is a material issue and the instruction is *not* requested by defense counsel, "failure to give it will be reviewable under a . . . harmless error standard." *Id.*

Identification is a material issue "when the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence." *Id.* at n.4. In this case, the record clearly shows defendant put identification at issue. However, defendant also concedes that no identification instruction was requested. Therefore, we review the trial court's alleged failure to give the *Dyle* instruction

12

under a harmless error analysis.

Four witnesses (Majano, Rivera, Adams, and King) made in-court identifications of the defendant. Three of those four (Majano, Rivera, and King) made out-of-court identifications as well. Defense counsel vigorously cross-examined each of the three witnesses regarding the accuracy of the out-of-court identifications and attempted to cast doubt upon the identifications by eliciting testimony regarding the statements that accompanied them. Further, defense counsel elicited testimony that Adams failed to make an out-of-court identification, and another housekeeper from Days Inn identified someone other than defendant as the man roaming the Days Inn premises.

Nonetheless, the record unequivocally reflects that three witnesses picked defendant's photograph from Detective Baxter's lineup. After receiving instructions from Baxter, Majano placed her finger on defendant's photograph. Rivera identified defendant as the man who exited the room where Majano was raped. King unequivocally identified defendant's photograph as the man she witnessed at her place of employment shortly before Majano's rape.

Our review of the entire transcript shows there were no misidentifications by Majano, Rivera, or King. Any "uncertainty" expressed in the women's statements accompanying the identifications, when read in context, was satisfactorily explained.

Clearly, the defendant placed identification into issue at trial. Identification was obviously a material issue which should have dictated the giving of the identification jury charge set forth by *Dyle*. Nonetheless, given the reliability of these identifications in conjunction with the other evidence tying defendant to these crimes, any error for failure to give the *Dyle* charge was harmless.

Defendant received sentences of three years for aggravated burglary, twenty years for each aggravated rape, ten years for attempted aggravated rape, and ten years for aggravated sexual battery.  Defendant does not contest the length of each sentence, but challenges the trial court's application of consecutive sentencing which resulted in an effective fifty-year sentence.  Specifically, defendant avers the trial court disregarded the consecutive sentencing criteria set forth in Tenn. Code Ann. § 40-35-115(b) and imposed an excessive sentence.

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

. . .

(2) [t]he defendant is an offender whose record of criminal activity is extensive; [or]

. . .

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.

Tenn. Code Ann. § 40-35-115(b)(2), (4); *see also* State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995).  Furthermore, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing.  State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

Contrary to the defendant's assertion, the trial court in this case did consider Tenn. Code Ann. § 40-35-115(b).  After determining the length of each sentence, the court stated, "[w]ith regard to multiple convictions, the Court finds there are reasons and factors [for the imposition of consecutive sentences], particularly

reason two under consecutive sentencing law." *See* Tenn. Code Ann. § 40-35-115(b)(2).

Thus, the trial court relied on defendant's extensive criminal history, which included the five offenses at issue in this case, the adult rape conviction, and the juvenile adjudication, to impose consecutive sentencing. Upon our *de novo* review, we conclude defendant also qualifies for consecutive sentencing as a dangerous offender. Based upon the trial court's finding that he committed these crimes shortly after release from the penitentiary for his prior rape conviction, and the uncontroverted testimony that he accomplished these crimes by use of a deadly weapon, we find his "behavior indicates . . . no hesitation about committing a crime in which the risk to human life is high." *See* Tenn. Code Ann. § 40-35-115(b)(4).

Furthermore, it is clear that a fifty-year sentence reasonably relates to the severity of defendant's offenses and is "necessary . . . to protect the public against further criminal conduct by the defendant." Wilkerson, 905 S.W.2d at 938. In this case, defendant's presence at another nearby hotel weeks before and again shortly before his attack on an unsuspecting housekeeper demonstrates a deliberate and predatory nature. His prior record indicates an on-going history of sexual offenses. Defendant is a sexual predator from whom the public deserves protection.

Consecutive sentencing is proper. This issue is without merit.

## X. CONCLUSION

Based upon the foregoing, we **AFFIRM** the judgment of the trial court in all respects.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**


_____
**THOMAS T. WOODALL, JUDGE**


_____
**L.T. LAFFERTY, SENIOR JUDGE**